UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| AMY FITZGERALD,<br><br>*Plaintiff*,<br><br>vs.<br><br>TYSON FOODS, INC.<br><br>*Defendant*. | § § § § § § § § § § | CIVIL ACTION NO.<br><br>_____ |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

The plaintiff, Amy Fitzgerald, ("Plaintiff" or "Fitzgerald"), complains of Tyson Foods, Inc. ("Defendant" or "Tyson Foods"), as follows:

## VENUE AND JURISDICTION

1. Fitzgerald is a citizen of the United States and a resident of the State of Texas.

2. Fitzgerald was a Regional Sales Manager for Tyson Foods and venue is proper because she has been subjected to unlawful employment practices committed in the State of Texas, Northern District, Dallas Division.

3. Tyson Foods is primarily involved in the business of processing and marketing chicken, beef, and pork.

4. Tyson Foods is a Delaware corporation, conducting business in Texas at 4114 Mint Way, Dallas, Texas, in the Northern District, and elsewhere, and this action accrued in whole or in part in the Northern District.

5. Tyson Foods may be served with process by serving its registered agent in Texas: CT Corporation System, 1995 Bryan Street, Suite 900, Dallas, Texas 75201.

6. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §1331, 28 U.S.C. §1343(a)(4), and 28 U.S.C. §1337. The complaint seeks declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202. This suit is authorized and instituted pursuant to the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §621, *et seq*.

7. This is a proceeding for compensatory and punitive damages, injunctive and other legal and equitable available to secure the rights of Fitzgerald under the ADEA. It is brought to prevent Tyson Foods from maintaining policies, practices, customs or usages of discriminating against Fitzgerald in regard to terms, conditions, and privileges of employment in violation of these statutes.

8. This matter in controversy exceeds, exclusive of interest and costs, the minimum jurisdictional limits of this Court.

**STATEMENT OF FACTS**

9. Amy Fitzgerald is a female and currently age fifty.

10. Fitzgerald first became employed by Advance Food Company as an Operator Specialist in September 1994, a predecessor company of Tyson Foods. Advance Food Company merged with Pierre Foods in approximately 2010 and it became AdvancePierre Foods. In 2017, AdvancePierre Foods was acquired by Tyson Foods.

11. Fitzgerald was promoted to Regional Sales Manager in 1995, and to Brand Manager in 1996. In 2000, due to restructuring Fitzgerald returned to her position as Regional Sales Manager. Fitzgerald held the title of Regional Sales Manager when the company was acquired by Tyson Foods in 2017. Fitzgerald performed her job successfully, regularly receiving meets or exceeds performance review ratings throughout her employment until the review she received in October 2019.

12. Fitzgerald worked remotely for Tyson from her home office in Dallas, Texas. On approximately October 1, 2018, Tyson did some restructuring and Fitzgerald began reporting to Jed Wells ("Wells"), Director of Sales, approximate age 47. Wells reports to Bill Shearin ("Shearin"), Senior Director of Sales, Food Service.

13. Fitzgerald worked in the SW division, consisting of Texas, New Mexico, Oklahoma, Arizona, and Las Vegas. As Regional Sales Manager, Fitzgerald was responsible for calling on distributors and operators in the North Texas region, which includes West Texas. There were six total Regional Sales Managers in the SW division. Additionally, there were three salespersons that handled operator accounts.

14. In March 2019, Fitzgerald received a mid-year review from Wells that indicated she was meeting expectations. At times after Wells became her manager, Fitzgerald asked him to travel with her to visit clients relating to marketing programs or conversions, but he rarely went on client visits with her. During the time she reported to Wells, he went to only two or three meetings with her at BEK DFW only. He never went to any other distributor to make a call. He had lunch with Fitzgerald two times and went to a few other broker meetings at Waypoint in Dallas only. He never went to Lubbock or Amarillo despite Fitzgerald asking him for help in Amarillo. Throughout the time Fitzgerald worked with Wells, she received little support from him in performing her job duties.

15. On October 17, 2019, Fitzgerald received her year-end performance review from Wells. For the first time in approximately 25 years of employment, Fitzgerald received an "inconsistent" performance rating on her annual performance review. In the review, Wells stated that Fitzgerald was distracted and spending too much time with her family. Fitzgerald was dumbfounded because she had no idea why he would make such statements. Wells had not previously told Fitzgerald that he thought her job performance was

inadequate. Wells requested that she sign the review and return it by the next day. The next day Fitzgerald texted Wells and said she did not agree with the performance review, but she indicated that she would sign it and return it due to his request that she do so.

16. Before the 2019 performance review, Wells had never discussed with Fitzgerald any perception that she was distracted due to family issues. Fitzgerald had taken two separate Fridays off to visit colleges with her daughter, but she used accrued paid time off.

17. In 2019, Tyson did a SAP transition that joined Tyson, Sara Lee and AdvancePierre into one system. This transition caused massive chaos for six months to a year because employees often could not see inventory levels or get trucks to get orders to customers. Additionally, sometimes it appeared there was product in the freezer but there would not be any there. Fitzgerald believes that none of the salespersons in her division made their quotas in 2019 and 2020 because there were major shortages to customers.

18. On October 31, 2019, Wells held a mandatory conference call for the Southwest Division. On that call, without any warning ahead of time, Wells took away eighty percent of Fitzgerald's accounts and gave the largest of her accounts, BEK DFW, to Luis Fuerte, approximate age 40.

19. Fitzgerald had spent over twenty years building the North Texas territory. After her termination, Fitzgerald learned that BEK DFW had repeatedly asked for her to be put back on the account after Wells had assigned it to Fuerte, but it was not returned to her.

20. From October 2019 to February 2020, Fitzgerald repeatedly asked Wells for more operators as there was no way Fitzgerald could meet her sales goals with the distributions and operators that she had left. Wells did not provide Fitzgerald any operators despite her requests.

21. In November 2019, Fitzgerald attended the national sales meeting. At that meeting they acknowledged employees who had reached milestone years at the company. Fitzgerald did not receive any acknowledgement despite having met the 25 year milestone of service.

22. At the time Fitzgerald received her performance review, Wells had not told her how negatively it would affect her year-end bonus. In January or February 2020, due to the negative performance rating on her 2019 year-end review, Fitzgerald received a substantially lower bonus than her counterparts.

23. On February 28, 2020, Wells placed Fitzgerald on a performance improvement plan ("PIP"). In the PIP, Fitzgerald was criticized for ineffective CRM usage. However, many salespersons at the company struggled with working with the CRM system. Indeed, at the national sales meeting, Fitzgerald became aware that some salespersons in other regions did not even know how to get into the CRM system.

24. Fitzgerald was aware at the time she was put on a PIP that substantially younger and/or male counterparts who had difficulty making quota and who were not effectively using the CRM tool, were not counseled or disciplined. On March 14, 2020, all salespersons at Tyson Foods were grounded from travel, and as a result Fitzgerald's PIP was suspended because of the inability to call on clients.

25. At the end of June 2020, Luis Fuerte, who had been given Fitzgerald's largest account when Wells took most of her accounts away, resigned from Tyson Foods. After he resigned, Wells divided the accounts that Fuerte had, giving the BEK account to Corr and all the operators to Keaton Hicks, approximate age late 20s, a salesperson who sold to operators in the Dallas area. Fitzgerald questioned Wells about why she was not getting any of the accounts and he said it was because all of the accounts could be called on from home due

to Covid-19. After this call, Wells redid Fitzgerald's PIP so she could do it out of her office during Covid-19.

26. Wells provided the new version of the PIP to Fitzgerald on June 26, 2020, with an ending date of July 24, 2020. After Wells reinstituted the PIP, Fitzgerald contacted Director of Human Resources Locken, to complain about the PIP and about the discriminatory and retaliatory way Wells was behaving in the PIP meetings.

27. On July 30, 2020, Wells terminated Fitzgerald's employment. Wells told her that she had improved but was being terminated for failing to successfully complete the PIP in the timeframe allotted.

## ADEA

28. Fitzgerald incorporates by reference paragraphs 9 to 27 herein.

29. Fitzgerald was born April 28, 1970 and is currently age 50. Fitzgerald is a member of the protected age group within the meaning of the ADEA.

30. At all times material to this action, Tyson Foods employed at least twenty employees and is an employer with the meaning of the ADEA.

31. A. Tyson Foods employs more than 100 employees;
    B. Tyson Foods employs more than 200 employees;
    C. Tyson Foods employs more than 500 employees.

32. All conditions precedent to the filing of this suit have been met:

    A. On or around September 22, 2020, Fitzgerald filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") and Texas Workforce Commission ("TWC"), alleging age, sex and retaliation discrimination;
    B. More than 60 days have passed since the date the charge was filed.

37. Fitzgerald alleges that Tyson Foods, in a continuing course of conduct, discriminated against her in the terms, conditions and privileges of employment because of her age, and specifically in subjecting Fitzgerald to less favorable working conditions than those to

which younger employees were subjected, including in failing to apply employee rules and/or performance standards equally and in terminating her employment.

38. Fitzgerald alleges that Tyson Food's age discrimination conduct is willful under the ADEA.

39. Fitzgerald has no plain or adequate remedy at law to correct the wrongs complained of herein, and has thus instituted this suit for damages, declaratory relief and injunctive relief provided for under the ADEA. Further, Fitzgerald is now suffering and will continue to suffer irreparable injury from Tyson Food's policies, practices, customs, and usages, set forth herein.

## RELIEF REQUESTED

39. Fitzgerald requests that this Court grant her the following relief from Tyson Foods:

    A. A declaratory judgment against Tyson Foods, declaring its past practices herein complained of to be unlawful under the ADEA;

    B. A permanent injunction, enjoining Tyson Foods from continuing to discriminate against her on account of age, in violation of the ADEA;

    C. Backpay, front pay, retroactive seniority, pension benefits, bonus payments, health benefits, and any other relief necessary to compensate Fitzgerald for damages for ADEA;

    D. Liquidated damages for Tyson Food's willful violation of the ADEA;

    E. Implementation of a clear and effective grievance procedure for employment discrimination complaints with an effective non-retaliation provision and advisement to all employees over the age of 40 of Tyson Foods of such grievance and non-retaliation provisions;

    F. Attorney fees from Tyson Foods for the prosecution of her ADEA claim;

    G. Costs for the prosecution of the ADEA claim, including the cost of expert witness fees;

    H. Pre-judgment interest at the legally prescribed rate from the date of the violations until judgment as well as post-judgment interest as applicable;

I. Such other general relief to which Fitzgerald is justly entitled.

## JURY DEMAND

40. Fitzgerald demands a jury on all ADEA claims, specifically, the ultimate issues of fact as to the merits of the dispute, backpay, frontpay, employee benefits, and compensatory and punitive damages, excepting the attorneys' fees issues.

Respectfully Submitted,

/s/ Jane Legler
Jane Legler
Texas Bar No. 03565820
Christine Neill
Texas Bar No. 00796793
Kyla Gail Cole
Texas Bar No. 24033113

Neill Legler Cole PLLC
3141 Hood Street, Ste. 200
(214) 748-7777
(214) 748-7778 (facsimiles)
christine@nlcemployeelaw.com
jane@nlcemployeelaw.com
kyla@nlcemployeelaw.com

Attorneys for Plaintiff